NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1147

COMMONWEALTH

vs.

CHRISTOPHER N. TARTAGLIONE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of a single count of threatening to commit a crime. See G. L. c. 275, § 2. We conclude that the evidence was sufficient to support the defendant's conviction. And although the jury were not instructed that the Commonwealth bore the burden of proving that the defendant "consciously disregarded a substantial risk that his communications [to the victim] would be viewed as threatening violence," Counterman v. Colorado, 600 U.S. 66, 69 (2023), we conclude that the evidence at trial made the inference of such conscious disregard "ineluctable, or inescapable," Commonwealth v. Desiderio, 491 Mass. 809, 820 (2023); accordingly, we affirm the judgment.

Facts.  Because the defendant challenges the sufficiency of the evidence underlying his conviction, we summarize the trial evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  The charge against the defendant had its origins in a verbal altercation between the defendant and the victim -- his landlord -- after the defendant had words with the victim's wife inside the victim's home.

At approximately 11 A.M. on May 6, 2023, the defendant and the victim's wife came into the same room of the house from opposite directions.  Both the wife and the defendant had dogs with them; the dogs, which were leashed, "got . . . excited and started running towards each other."  The defendant began "yelling and screaming" at the wife; in response, the victim -- who was seated in the same room, removing his work boots -- stood up while holding the boots, told the defendant to stop speaking disrespectfully to his wife, and gestured with the boots as if to hit the victim.[1]  After stepping away from the victim briefly, the defendant came within inches of the victim, jabbing his finger toward the victim and shouting at him.  By his own account, the defendant twice said that he would beat the

_____

[1] As a result of this conduct, the victim was charged and convicted of assaulting the defendant.

2

victim up.[2]  The victim, who was in fear "to some degree" based on the defendant's words, stepped back, and the defendant followed, continuing to yell and point at the victim as the victim put the boots down on a fireplace hearth.  The victim stepped forward and appeared to try to head-butt the defendant, and the defendant subsequently left the house, whereupon he called the police.  The exchange, up to the point when the defendant left the house, was captured on a video recording that the Commonwealth played for the jury.[3]

Discussion.  1.  Sufficiency of the evidence.  As relevant here, to prove the defendant guilty of threatening to commit a crime, the Commonwealth was required to prove five elements beyond a reasonable doubt:  (1) that the defendant expressed an intent to injure the victim; (2) that the defendant intended that his threat be conveyed to the victim; (3) that the injury, if carried out, would constitute a crime; (4) that the defendant made the threat under circumstances which could reasonably have caused the victim to fear that the defendant had both the

---

[2] According to the victim, the defendant said "he was going to beat the F out of [the victim] and burn [or bury] [him] outside."  The defendant testified that he told the victim that "[he] would kick the fuck out of him."  The difference between these accounts of the defendant's words is not significant to our analysis.

[3] The video recording is included in our record.

intention and the ability to carry out the threat; and (5) that the defendant was aware that others could regard his statement as threatening violence, and he delivered it anyway.  See Commonwealth v. Cruz, 495 Mass. 110, 113-114 (2024).  The defendant challenges only the fourth element, contending that "there was no record evidence that [he] had the intention or ability to carry out the alleged threat . . . or . . . that a reasonable person in [the victim's] shoes would have been in fear."  We do not agree.

The defendant's intent to batter the victim was readily inferable from his own trial testimony that in the midst of a heated yelling match with the victim, and while the two men were standing toe-to-toe, the defendant told the victim that he "would kick the fuck out of him."  See Commonwealth v. Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001) (in assessing alleged threat, "the jury may consider the context in which the . . . statement was made"); Commonwealth v. Elliffe, 47 Mass. App. Ct. 580, 583 (1999) (among factors from which jury could draw inference that defendant intended violence was "evidence that the defendant repeatedly shouted, 'Drop the charges!' while he was 'very, very angry,' 'standing two feet from [the victim]'").  Likewise, based on the dynamics between the defendant and the victim and their apparent similarities in size and mobility (as documented on the video recording of the

4

altercation), the jury could have found that the victim reasonably feared that the defendant would make good on his statement. See Commonwealth v. Strahan, 39 Mass. App. Ct. 928, 930 (1995) ("[w]hether the defendant ultimately might not carry out the threat is not relevant to the question of sufficiency" of evidence that threat was made). This evidence was sufficient to demonstrate that, considered against an objective standard, the defendant's words "would cause the target of the threat to fear that the threatened crime or injury might be inflicted."[4] Commonwealth v. Leonardo L., 100 Mass. App. Ct. 109, 114 (2021), quoting Commonwealth v. Maiden, 61 Mass. App. Ct. 433, 436 (2004). See Sholley, supra at 726 ("the context of the statement and the defendant's demeanor at the time [the threat was made]" are relevant to reasonableness of victim's fear); Commonwealth v. Chalifoux, 362 Mass. 811, 816-817 (1973) (evidence of victim's subjective fear is relevant to question whether fear was objectively reasonable); Commonwealth v. Winter, 9 Mass. App. Ct. 512, 528 (1980) (same).

---

[4] To the extent the defendant argues that the video recording shows that the victim was not afraid of the defendant, even after the defendant made the statements about beating the victim up, the defendant overlooks our standard of review. See Latimore, 378 Mass. at 676-677.

5

2.  Counterman issue.[5]  In Counterman, an opinion released shortly before the trial in this case, the United States Supreme Court ruled that because the First Amendment "shield[s] some true threats from liability," Counterman, 600 U.S. at 75, the maker of a true threat may be subject to criminal conviction only if the prosecution proves that "the person acted at least recklessly -- that is, the person is aware that others could regard his statements as threatening violence and delivers them anyway" (quotations omitted).  Cruz, 495 Mass. at 113, quoting Counterman, supra at 79.  In Cruz, the Supreme Judicial Court adopted the reasoning in Counterman, and in an Appendix, issued provisional jury instructions containing a fifth element required to prove a charge under G. L. c. 275, § 2.[6]  See Cruz, supra at 115 n.7, 118 (Appendix).

---

[5] The Commonwealth raised this issue in its brief and took the position that the defendant's conviction should be vacated because the jury were not instructed on the final element of the threat charge, as set forth in Counterman and Cruz.  At oral argument, defense counsel agreed that the conviction should be vacated but maintained that the evidence was insufficient to permit a retrial.  As is our duty, we have independently reviewed the issue.  See, e.g., Commonwealth v. Escalera, 462 Mass. 636, 650 (2012); Commonwealth v. Luciano, 79 Mass. App. Ct. 54, 61 (2011).

[6] The relevant language in the provisional instruction requires the Commonwealth to prove beyond a reasonable doubt, inter alia, "That the defendant was aware of or consciously disregarded a substantial risk that the communication would be viewed as threatening violence.  This element requires that the defendant was aware that others could regard his statement as

6

The trial in this case was conducted in April 2024, after the Supreme Court issued its opinion in Counterman but before the Supreme Judicial Court released its ruling in Cruz. See Counterman, 600 U.S. at 66; Cruz, 495 Mass. at 110. The judge instructed the jury on the law as it existed before Counterman but was not asked to instruct the jury on the new element of the crime of threats as articulated in Counterman, supra at 79. The omission of the final element of the offense from the jury instructions raises the question whether the defendant's conviction must be vacated because it violates the First Amendment. See Cruz, supra at 114. "[T]o determine whether a substantial risk of a miscarriage of justice is created by the omission of a required element from the jury instructions, the question is . . . whether the presence of the omitted element was an ineluctable, or inescapable, inference from the evidence presented at trial." Desiderio, 491 Mass. at 820, citing Commonwealth v. Azar, 435 Mass. 675, 688 (2002), S.C., 444 Mass. 72 (2005).

On the evidence here, we conclude that the omission of a Counterman instruction did not create a substantial risk of a miscarriage of justice. In the course of a heated face-to-face confrontation in which the victim had already assaulted him, the

threatening violence and yet the defendant delivered it anyway." Cruz, 495 Mass. at 118 (Appendix).

7

defendant made his threat to commit an act of violence against the victim for the express purpose of deterring the victim from taking any further violent action against him. On this basis, Cruz is distinguishable. In Cruz, the defendant's threat -- "I swear to god if you touch my [kids] one more time I'll punch you in your fucking face Bitch" -- was conveyed via text message two hours after his verbal confrontation with the victim. Cruz, 495 Mass. at 112. In those circumstances, there was at least some possibility that a jury could find both that the defendant believed that others would dismiss his message as mere posturing and that he did not appreciate that his message would be received as a serious threat of violence. See id. at 113, quoting Counterman, 600 U.S. at 79 ("to convict a person for making a true threat, the State must prove that . . . the person is aware that others could regard his statements as threatening violence and delivers them anyway" [quotations omitted]).

Here, in contrast, given the defendant's words, the context in which he said them (described by both the defendant and the victim, as well as documented in the video recording of the incident), and his purpose in making the threats, the only reasonable inference the jury could have drawn from the evidence was that the defendant was aware that others (and, specifically, the victim) "'could regard his statements as' threatening violence," Cruz, 495 Mass. at 113, quoting Counterman, 600 U.S.

8

at 79, and that he delivered them anyway in hopes that the victim would regard them that way.  Because the evidence at trial led ineluctably to that inference, we are satisfied that the defendant's First Amendment rights were not infringed. Contrast Desiderio, 491 Mass. at 821 (circumstantial evidence of missing element "told a powerful and persuasive story," but did not "require the jury to find" missing element).

                                        Judgment affirmed.

                                        By the Court (Ditkoff, Hand &
                                          Grant, JJ.[7]),

                                        Clerk

Entered:  September 11, 2025.

---

[7] The panelists are listed in order of seniority.